Ludtke and another, Appellants, vs. Compound School District No. 5 of the Town of Lima, Respondent.

*November 14—December 19, 1944.*

236

For the appellants there were briefs by *Earl Rogers* of Whitewater, attorney, and *Jeffris, Mouat, Oestreich, Wood & Cunningham* of Janesville of counsel, and oral argument by *Otto A. Oestreich.*

*Easton Johnson* of Whitewater, for the respondent.

ROSENBERRY, C. J.   On the 31st day of December, 1847, one Isaiah Dike was the owner of the premises hereinafter described.   On that day he executed an instrument, of which the following is a copy:

"This indenture made the 31 day of December in the year of our Lord one thousand eight hundred and forty seven.   Between Isiah Dike of the town of Lima in Rock county Wisconsin Territory party of the first and compound school District Number five being in the said town of Lime and the town of Whitewater in Walworth county of the second part.   Wit-

nesseth that the said Isiah Dike for and in consideration of the sum of ten dollars to him in hand paid by the said school district, hath bargained sold, demised & leased and by these presents doth bargain, sell, demise and lease unto the said school district all that certain piece of land situate in said town of Lima 'and bounded as follows. Commencing at the centre of the Rock and Walworth county road where it is crossed by the centre of the Dulace and Whitewater road on the east & west centre line of section (13) thirteen in said town of Lima and running thence west on said centre line nine rods thence south nine roads—thence east nine rods—thence north along centre of said county road nine rods—to the place of beginning —containing one half acre of land more or less to have and to hold the said piece of land with the appurtenances unto the said school district so long as the said school district shall occupy said piece of land for district school purposes and the said district shall keep a school house on the said land, and occupy the same by having a district school in said house two months in a year.

"In witness whereof I have hereunto set my hand and seal the day & year first above written.

ISAIAH DIKE (L. S.)

"In presence of } WILLARD STEBBINS
IRA KINNEY"

"Whitewater April the 4 1848

"Personelly appeared before me the siner of the within lease and acknowledged the same to have been sined by him for the purpose herein specified.

AZOR KINNEY Justice of the Peace."

*Indorsement*

"Isaiah Dike
to
School District No. 5

———————

Lease
Recorded in Registers
Office Rock County
Wis Sept 28th 1853
at 1½ O.Clock P.M.
in Book 'L' of Mortgages on
Pages 586
SAMUEL A. MARTIN Register
By C. W. GIBBS Deputy"

After finding the facts in regard to the execution and recording of the instrument, the court further found that since the execution and delivery of the instrument, the defendant school district has been and now is in the sole and exclusive possession of the premises therein described; that the price paid by the district, $10, was an adequate price for the land at the time and place in question; that a school has been conducted on said premises since shortly after the date of the instrument until three years ago. For the last three years the school district, on account of the small number of children of school age in the district, has voted to suspend their school and transport their children to another district; that at the present time there are in said district two children of school age. The school building and equipment have remained intact and regular meetings have been held; that the school property is still being used for school purposes although school proper is not being held on the premises. Conditions may again require school to be held on the school land.

The court further held that the instrument in question conveyed to the school district an absolute title in fee and that the district ever since has been and now is the unconditional owner in fee thereof.

The plaintiffs contend that the instrument executed by Isaiah Dike is a lease; that the defendant no longer complies with the conditions of the lease fixing the terms, and that by reason of such failure the lease has been terminated and they are entitled to the possession of the premises.

The defendant contends that the document is, as the court found, an absolute conveyance of the premises and that the judgment of the court quieting title in the defendant is right.

The contentions of the parties in this case raise a question of considerable difficulty. The words "bargain and sale" were ordinarily used at the time in question in a deed in connection with the word "grant," the usual form being "hath granted, bargained and sold." On the other hand, "demise

and lease" were words ordinarily and customarily used in a lease in connection with the word "let," "let, demise and lease." A deed of bargain and sale was customarily executed by the grantor. A lease on the other hand was customarily executed by the lessor and the lessee, the lessee's execution being required because of the covenants which he ordinarily entered into with respect to the payment of the rent, preservation of premises, and other similar matters. Leases were either for life or 'for years or at will. According to the terms of this instrument, the right of the defendant to occupy the premises was for so long as the said district shall keep a school on the said land and occupy the same by having a district school in said house two months in a year. Customarily a lease provided that the rental should be paid in monthly, quarterly, or in annual instalments and not in a lump sum. It is quite clear that the instrument was not intended to create a reversionary interest in the grantor and his successors in title because there were no words of forfeiture or right of re-entry reserved.

It is apparent that the instrument in question was drawn by someone with a "little learning" in the law; otherwise the scrivener would not have used the words "hath bargained sold, demised and leased."

The first question to be determined is whether the terms of the instrument under consideration are ambiguous. If the language is ambiguous the court is not restricted to a consideration of the face of the instrument in an attempt to ascertain the intent of the parties. It does not seem necessary to argue that the use of the words "hath bargained sold, demised and leased" created an ambiguity. No one can determine from these words or from other language contained within the four corners of the instrument whether it was intended to be a lease or a deed.

From an inspection of the original instrument it would appear that the instrument was prepared and written before December 31, 1847, the date of its execution, because the

numeral 31 in the first line, the signature of Dike and the witnesses "In presence of," are in ink and in a handwriting different from the penmanship of the body. The acknowledgment on the back of the instrument, which is dated April 4, 1848, differs in the same respect from the body of the document. However, the word "Lease" written on the back of the instrument, customarily written to indicate the nature or character of the document, appears in the same ink and handwriting as that of the body. The acknowledgment also describes the instrument as a lease. In addition to this, it is a matter of common knowledge that throughout the country previous to and during the period when this instrument was executed, grants were common to school districts for the purpose of erecting school buildings. While it cannot be said that that followed any particular pattern, it is quite probable that the great majority were either leases or deeds upon condition subsequent.

While the matter is not free from doubt, we are of the opinion that such evidence as appears preponderates in favor of the conclusion that the parties to the instrument intended to and did create a lease of the premises described therein. The lessee did not sign because the total consideration for the lease was paid at the time of its execution and delivery.

It is further considered and held that the language—

"To have and to hold the said piece of land with the appurtenances unto the said school district so long as the said school district shall occupy said piece of land for district school purposes and the said district shall keep a school house on the said land, and occupy the same by having a district school in said house two months in a year"—

states the contingencies which are to determine the duration of the lease. The lease was to run as long as, (1) the school district should occupy the land for school district purposes; (2) should keep a schoolhouse on the land; and (3) occupy

the same by having district school in said house two months in the year. When it failed to do any one of those things, the lease was to terminate. While, as appears from the evidence, the district still maintains a schoolhouse, that is, there is a schoolhouse upon the premises, it has ceased for a period of more than three years to occupy the same by having a district school in said house two months in the year. The lease is therefore terminated and the plaintiffs are entitled to possession of the premises. There is some doubt that merely keeping a building upon the premises is maintaining a schoolhouse. It is not the character of the building that determines whether a building is a schoolhouse but the use to which it is put. The building being no longer used for school purposes, it is probably not a schoolhouse. This would seem to follow from the next condition that the school be maintained therein for two months in the year.

Upon the whole case it is considered and held, (1) that the document in question was a lease; (2) that the term fixed in the lease has expired; (3) that the title to the premises free and clear of any right of the school district is in the plaintiffs; and (4) that the plaintiffs are entitled to possession.

*By the Court.*—The judgment appealed from is reversed, and cause remanded to the trial court with directions to enter judgment in accordance with this opinion and dismissing the defendant's counterclaim.