KOONZ, Appellant, vs. JOINT SCHOOL DISTRICT NO. 4, VILLAGE OF GRESHAM, Respondent.

*February 7—March 7, 1950.*

458

For the appellant there was a brief by *James H. Larson,* attorney, and *Matthew M. Wallrich* of counsel, both of Shawano, and oral argument by *Mr. Larson.*

For the respondent there was a brief by *Ken Traeger* of Gresham, and *Fischer, Brunner & Strossenreuther* of Shawano, and oral argument by *Robert H. Fischer.*

MARTIN, J. The original decision of the trial court was based upon the proposition that since the deed to the school district provided for a reversion to the grantor in the event that the district should cease to use the land for school purposes, a cessation of such use, without any further act on the part of the grantor, would result in a reversion of the title.

Defendant's motion for a review of the judgment was granted and the trial court, in reversing itself on rehearing, very carefully presented the law of Wisconsin requiring re-

entry or some unequivocal act on the part of the grantor to indicate his intention to claim the property as his own by virtue of his rights as a result of a breach of condition subsequent. See *Mash v. Bloom* (1907), 133 Wis. 646, 651, 114 N. W. 457; and *Cobban v. Northern Wisconsin State Fair Asso.* (1933), 212 Wis. 235, 241, 248 N. W. 463.

There is no evidence to show that any indication was given prior to the commencement of this action of an intention on the part of the grantor to claim a forfeiture of the premises for breach of the condition subsequent other than the letter of plaintiff's counsel to the defendant under date of August 10, 1948. It had come to the attention of the plaintiff that the defendant was advertising the school building for sale and removal from the premises, and the letter protested against the right of the defendant to make such a sale. The only portion of the letter which indicates that the plaintiff might have had in mind a claim that the title should revert to him is contained in the following paragraph:

"Since the school buildings were built on permanent foundations they form an integral [part] of the real estate and revert back with the property to Mr. Koonz."

The letter cannot be construed to comply with the law on notice of re-entry or of some unequivocal act.

It is the position of the defendant school district that this parcel at all times was used for school purposes and that there could be no breach of condition subsequent or resulting reversion of title.

It was stated in *St. Clara College v. Madison* (1947), 250 Wis. 538, 545, 27 N. W. (2d) 745:

"It is a general rule, too well established to need citations, that conditions subsequent in a deed will be construed most strongly against the grantor and forfeiture will not be enforced unless clearly established. 'It is also a well-established rule that, when maintenance or use is a part of the condition, there must be such neglect to maintain as to indicate an

intention not to comply, to constitute a breach of condition.' " (Cases cited.) See also *Burrows v. Madison Park & P. D. Asso.* (1922), 177 Wis. 639, 643, 189 N. W. 535.

The evidence shows that from 1943 to the time of the consolidation order in June, 1948, the pupils of District No. 1 were transported to the village of Gresham; that the school building remained intact with all equipment, books, and even a coal supply, in readiness for occupancy for school use; that each year annual meetings were held therein; that the insurance policy was kept in force; and that the only occupancy was the permissive use granted by the board to Cyrus Koonz to store grain. Each year the district obtained from the supposed owner of the reversionary interest a waiver of his rights.

These facts clearly indicate that the school district had no intention of abandoning the local school. It was transporting the children until such time as they might again find it practicable to instruct the children locally. It is common knowledge that for a few years there may be very few children in a neighborhood and later on the juvenile population may be greatly increased. The district voted on a year-to-year basis whether to operate the school or to transport the pupils.

In *St. Clara College v. Madison, supra,* the grantee was excused from doing required fencing because of war conditions which made it difficult, if not impossible, to obtain material and labor to make necessary repairs. Had it been willing to pay a premium, the grantee could have gotten materials and labor. In the present case, the school district could have maintained classes on the premises at a financial loss. Temporary conditions such as these tend to excuse strict compliance with the terms of a condition subsequent.

The consolidation order of June, 1948, merged the two districts. The first annual meeting did authorize the board to sell if they deemed it advisable. The board did offer it for sale but on October 11, 1948, rejected all bids and determined not to sell the schoolhouse, and to clean up the

property, plant trees, and retain it for a district park and playground.

In *Mills v. Evansville Seminary* (1883), 58 Wis. 135, 143, 15 N. W. 133, the conveyance was given with a right of reversion if it ceased to be used for seminary purposes. It was so used for some time and a minority of the voters attending a meeting passed a resolution authorizing the selling of the land to a manufacturing concern. The land was later reconveyed to the seminary and reopened as a seminary. The court stated:

"True, they conveyed away the property, and did acts quite inconsistent with the due performance of their duty. But they have retraced their steps, and are now using the property for the purpose designated by the grantors. We have referred to the rule of law that these conditions are strictly construed so as to avoid a breach."

In the present case the school board, by its official action, evinced its intention to use the property within the meaning of the term "school purposes."

Plaintiff relies on *Putney v. School District* (1934), 215 Wis. 539, 255 N. W. 76, in which the apparent intention of the school district was to permanently abandon the property. It purchased a tract of land, three acres in extent, about one quarter of a mile distant from the lands described in the complaint, and built thereon a new school building of a size and kind adequate for the needs of the district; and removed from the old school building all of the school paraphernalia, furniture, and equipment with the exception of a few small articles of inconsequential value. While the school-board members testified that they were contemplating using the premises for playground purposes, it does not appear that any action was taken to implement the plan.

*Ludtke v. Compound School District* (1944), 246 Wis. 235, 237, 16 N. W. (2d) 562. cited by plaintiff is also distinguishable for in that case there was no reversionary clause, it was a lease (not a deed as herein), and it provided

that they were to have and to hold the said piece of land with the appurtenances unto the said school district "so long as the said school district shall occupy said piece of land for district school purposes and the said district shall keep a schoolhouse on the said land, and occupy the same by having a district school in said house two months in a year."

The action of the school board herein in dedicating the land for park and playground purposes and ordering trees to be planted before a forfeiture was claimed, showed an intention to continue to use the property for school purposes. This definite action substantiates defendant's claim that there was no abandonment and none was contemplated.

*By the Court.*—Judgment affirmed.