WAUCONDA COMMUNITY UNIT SCHOOL DISTRICT NO. 118, LAKE COUNTY, Plaintiff-Counterdefendant-Appellee, v. La SALLE NATIONAL BANK, Trustee, *et al.*, Defendants-Counterplaintiffs-Appellants.

Second District   No. 85—156

Opinion filed May 5, 1986.

Louis R. Hegeman and Kathryn S. Mueller, both of Gould & Ratner, of Chicago, for appellants.

Michael A. Loizzi and Elinor P. Swiger, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Wauconda Community Unit School District No. 118, Lake County (Wauconda), filed a complaint for declaratory judgment against the La Salle National Bank, as trustee, and John Crown and unknown beneficiaries of the trust (collectively hereinafter called Crown) to determine the rights of the parties with respect to a deed for land and its reversion provision. The property had previously been given by Crown to Wauconda to establish a public school, now known as the Robert Crown Elementary School (Crown School). Following cross-motions for summary judgment, the trial court granted Wauconda's motion for summary judgment, essentially finding that the discontinuance of regular classroom instruction at Crown School and the proposed use of the property for storage of school property, athletic activities, and other school purposes, as set forth in the school board's resolution, did not cause the property to revert to Crown.

Crown raises two issues on appeal: (1) whether there are genuine issues of material fact which preclude the granting of summary judgment, and (2) whether the trial court erred in granting Wauconda's motion for summary judgment and denying Crown's cross-motion for summary judgment.

This declaratory judgment action was filed by Wauconda on March 20, 1984, and alleged, in pertinent part, that certain real estate was conveyed to Wauconda as a charitable donation by Crown on March 1, 1971, and contained a reversion provision, as follows:

"*** provided however that the party of the second part [SCHOOL DISTRICT] by accepting this charitable donation does hereby agree that the real estate herein described shall at all times be used solely and exclusively for public school purposes and that in the event the party of the second part [SCHOOL DISTRICT] shall at any time hereafter cease to use said real estate solely and exclusively for public school purposes then title to the same shall forthwith revert to the party of the first part [LA SALLE NATIONAL BANK] or its successors, heirs and assigns to their sole use and benefit for-

ever and without compensation to party of the second part [SCHOOL DISTRICT], its successors and assigns."

It is further alleged that Crown School was built by Wauconda on the real estate and that the school has been continuously used for school purposes, including regular classroom instruction. The complaint set forth that on March 1, 1984, Wauconda adopted a resolution to temporarily discontinue regular classroom instruction at Crown School at the beginning of the 1984-85 academic year because of declining enrollment and financial constraints. The resolution further stated that the administration was to continue to use the Crown School and property upon which it is located for school purposes, including storage of school property, use of adjacent grounds for school athletic activities, and other school purposes. The resolution provided that Wauconda was to continue to maintain property-damage and liability insurance on the property, and directed its attorneys to commence legal action to determine whether temporary discontinuance of regular classroom instruction at the school would jeopardize its ownership of the property. The complaint alleged that there was an actual controversy over whether discontinuance of regular classroom instruction would cause the property to revert to Crown and sought an adjudication of the rights of the parties under the provisions of the deed.

Crown answered and counterclaimed, alleging, in substance, that the proposed changes in the use of the property will constitute a violation of section 16—1 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 16—1), pertaining to gifts to a public school district, and also will cause title of the property to revert to Crown under the terms of the deed. Crown requested that a declaratory judgment be issued in its favor declaring that the proposed changes in use will, if implemented, create a reversion and cause title to revert under the terms of the deed.

On July 25, 1984, Wauconda filed its motion for summary judgment which, along with legal argument, included the affidavit of H. Darrell Dick, the school superintendent. The affidavit stated, *inter alia*, that in conjunction with the previous resolution, pupils and teachers at Crown School were being reassigned for the school year beginning August 27, 1984. Crown filed a lengthy memorandum in opposition to the motion for summary judgment containing a statement of facts and argument. A deposition and affidavit of John Crown and other discovery materials were filed and referred to in the memorandum. Crown then filed a cross-motion for summary judgment on September 4, 1984, stating "there exists no material is-

sue of fact" and it was entitled to a judgment as a matter of law. The motion adopted the deposition and documents referred to in the memorandum in opposition to Wauconda's summary judgment motion and asserted that Wauconda does not have any plans or programs to use the property for storage, athletic activities, or other school purposes if classroom instruction is discontinued. The motion further stated that whether the classroom instruction was discontinued temporarily or otherwise, the property would revert to Crown by the terms of the deed.

In a memorandum order filed January 21, 1985, the trial court found that parol evidence of the intent of the grantor to the deed was not admissible and there were no controverted facts on all essential elements of both motions for summary judgment; that the words in the deed "to be used as a public school site" are merely precatory language, suggestive of the use to be made of the property, but did not limit the use of the property or control the separate reverter provision; that the term "school purposes" in the reverter clause does not require the property to be used solely and exclusively as the site of a public school holding regular classroom instruction; that the proposed use of the property for storage of school property, use of the adjacent grounds for school athletic programs, and other such purposes as the board deems proper, as set forth in the resolution, would constitute school purposes; and that whether and how the resolution is implemented were beyond the issues raised in the declaratory judgment action.

Crown contends that summary judgment should not have been granted because numerous issues of material fact are raised pertaining to the veracity of Wauconda's plans to use the property for storage of school equipment and for athletic activities. Crown maintains that various affidavits, depositions, answers to interrogatories, and other documents dispute the resolution which sets forth Wauconda's decision to temporarily discontinue regular classroom instruction at Crown School for financial reasons and the proposed school purposes for the property. Wauconda responds that in requesting a declaratory judgment concerning the effect of the resolution, it sought a judicial ruling that the temporary discontinuance of classroom instruction would not "trigger" the reverter clause of the deed and the court was called upon only to interpret the reversion provision in the deed.

Wauconda's complaint for declaratory judgment was filed on March 20, 1984, while Crown School was in full operation. Suit was brought to determine whether the resolution adopted March 1, 1984,

to discontinue regular classroom instruction for the following school year and use the school for other school purposes such as storage of school property and athletic activities would cause the property to revert under the terms of the deed. It is evident from the pleadings that Wauconda hoped to expedite the proceedings and obtain a determination by the court prior to the beginning of the coming school year so that in the event of a ruling adverse to it, there could be a reevaluation of the decision to discontinue regular classroom instruction. In this light, the declaratory judgment action was not based on the actual implementation of the proposed school purposes upon closure of Crown School, but at issue was whether discontinuance of regular classroom instruction and the proposed use for other school purposes would cause a reversion of the property. Crown's counterclaim for declaratory judgment clearly was directed at the same issue of whether the proposed change by resolution in the use of Crown School would cause title in the property to revert to Crown.

■ Thus, while in discovery, evidence may have been developed which might reveal factual disputes as to the future proposed school uses of the property, any such factual questions were not material to the issue sought to be determined concerning a construction of the deed and reversion provision as it pertains to discontinuance of regular classroom instruction. (See *Illinois Power Co. v. City of Jacksonville* (1960), 18 Ill. 2d 618, 624, 165 N.E.2d 300; *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 340, 431 N.E.2d 62.) Whether the actual use of the Crown School upon discontinuance of regular classroom instruction was for public school purposes is a matter not before the court in this proceeding. (See *Mahrenholz v. County Board of School Trustees* (1984), 125 Ill. App. 3d 619, 628-29, 466 N.E.2d 322.) When this proceeding was not resolved prior to closing the school, Crown did not seek to amend its pleadings to include any issue concerning the actual use of the school upon discontinuance of regular classroom instruction. Accordingly, the trial court correctly determined that this declaratory judgment action could be determined as a matter of law on the cross-motions for summary judgment. Any factual disputes arising from discovery were not material to the legal issue before the court.

The principal issue presented in this appeal is whether the discontinuance of regular classroom instruction at Crown School and the proposed use of the school for other public school purposes would cause a reversion of the property to Crown under the terms of the deed originally conveying the property to Wauconda. The deed, in pertinent part, is as follows:

"WITNESSETH, that said party of the first part, in ~~consideration of the sum of~~ ~~Dollars~~
~~($~~ ~~) and other good and valuable considerations in~~
as a charitable donation
~~hand paid,~~ / does hereby grant, sell and convey unto said party of the second part, the following described real estate, situated in Lake County, Illinois, to wit:

[Legal Description]

together with the tenements and appurtenances thereunto belonging., to be used as a public school site.

TO HAVE AND TO HOLD the same unto said party of the second part as aforesaid and to the proper use, benefit and behoof of said party of the second part forever.; provided however, that the party of the second part by accepting this charitable donation does hereby agree that the real estate herein described shall at all times be used solely and exclusively for public school purposes and that in the event that party of the second part shall at any time hereafter cease to use said real estate solely and exclusively for public school purposes then title to the same shall forthwith revert to party of the first part or its successors, heirs and assigns to their sole use and benefit forever and without compensation to party of the second part, its successors and assigns."

Crown contends that the trial court's decision, which relied on *Mahrenholz v. County Board of School Trustees* (1984), 125 Ill. App. 3d 619, 466 N.E.2d 322, which interpreted the term "for school purposes only" in a deed, is not controlling here because Crown's deed was more detailed and also contained the words "to be used as a public school site" and "at all times." Crown argues that the term in the deed "to be used as a public school site" defines and limits the term "public school purposes" in the reversion clause and precludes a finding that Wauconda can discontinue classroom instruction without causing a reversion of the property.

In *Mahrenholz*, a deed to land was given to the school district which provided: "This land to be used for school purposes only; otherwise to revert to Grantors herein." The appellate court, in a well-reasoned opinion discussing authority from other jurisdictions, held that, as the phrase is used in the deed, the term "school purpose" does not require the actual holding of classes and that some alternate use is permissible that would still be within the realm of "school purpose." (*Mahrenholz v. County Board of School Trustees*

(1984), 125 Ill. App. 3d 619, 627-28, 466 N.E.2d 322.) Summary judgment for the school district was reversed, however, because genuine issues of material fact existed as to the actual use of the property. 125 Ill. App. 3d 619, 631-32, 466 N.E.2d 322.

■ Contrary to Crown's contention, we believe the decision in *Mahrenholz* pertaining to the phrase "school purposes" to be correct and controlling as to the deed in question here. The deed in the instant case conveyed the property to Wauconda "to be used as a public school site." This grant was then followed by the words "provided, however, *** the real estate *** shall at all times be used solely and exclusively for public school purposes and that in the event that party of the second part shall at any time hereafter cease to use said real estate solely and exclusively for public school purposes then title *** shall forthwith revert." Crown contends that the words "at all times" make the instant deed more comprehensive than the deed in *Mahrenholz* and require that the property be used as a public school site "at all times." However, the phrase is only used in the reversion clause which states "shall at all times be used solely and exclusively for public school purposes" which does not have a different meaning than "school purposes only." We believe the words "to be used as a public school site" are merely declaratory of the general purpose of the conveyance, but they do not of themselves render the estate conditional. (See *Downen v. Rayburn* (1905), 214 Ill. 342, 347, 73 N.E. 364.) Nor do the words, as used in this deed, "to be used as a public school site" convey a more restrictive or distinctive meaning than "for public school purposes." The operative words which cause the title to revert are contained in the reversion clause and follow the words "provided however." The words in the reversion clause chosen by the grantor state that if Wauconda shall cease to use the property solely and exclusively "for public school purposes," title reverts to the grantor.

Crown relies on *Craig v. Unknown Heirs* (Okla. 1961), 358 P.2d 835, and points out the similarity in the use of the words "To Be used for a School House site only" contained in the deed in issue there to the words "to be used as a public school site" in the instant case. In *Craig*, the court held that the use of the school for storage of school seats from another school and for community activities did not show an intention to use the land for any purpose connected with maintaining a public school on it. We note that the words of limitation in the deed in *Craig* were contained in the reversion clause, not merely following the property description as here. Also, the case does not stand for the proposition urged by

Crown that classroom instruction must take place in the school under the words of that deed. Thus, *Craig* is not helpful to Crown.

As the words "for public school purposes" in the reversion provision control, we agree with the decision in *Mahrenholz*, and the numerous out-of-State authorities cited therein, that this term does not require the actual holding of classes and that some alternate use is permissible which is within the realm of "school purposes." (*Mahrenholz v. County Board of School Trustees* (1984), 125 Ill. App. 3d 619, 628, 466 N.E.2d 322.) Despite Crown's arguments which attempt to distinguish *Mahrenholz* from this case, we find the basic question presented there quite similar and the analysis persuasive.

■ Crown also argues that parol evidence should be examined as an aid to the deed's interpretation. Crown urges that the deposition of John Crown and other affidavit and documentary evidence establish that the school site was donated to serve as a public school holding regular classroom instruction. While we have examined this material and do not believe it supports Crown's position, parol evidence was properly not considered by the trial court. The parol-evidence rule requires that the nature and extent of the estate granted shall be determined, as a matter of law, from the deed itself. It is not proper to go beyond the four corners of the deed to ascertain the intention of the parties (*Rockford Trust Co. v. Moon* (1938), 370 Ill. 250, 253, 18 N.E.2d 447) or to limit the estate granted to a greater extent than the words in the deed indicate (*Mahrenholz v. County Board of School Trustees* (1984), 125 Ill. App. 3d 619, 626, 466 N.E.2d 322).

■ Crown finally contends that section 16—1 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 16—1) requires Wauconda to find some other alternative to closing Crown School. Section 16—1 provides:

> "Whenever any grant, gift, donation or legacy of real or personal property has been or shall be, directly or indirectly, made to or for the use of any public school district and the deed, will or other instrument by which such grant, gift, donation, or legacy is made declares in terms or in substance that such property shall be held, managed, improved and invested or otherwise disposed of for the use and benefit of the public schools in such district, the title to such property shall be vested in the school board of such district for the use so expressed and shall be held, managed, improved, invested or disposed of by such board in such manner as will best pro-

mote and carry into effect the intention of the person making such grant, gift, donation, or legacy as expressed in the instrument by which it was made.

This Section does not apply in any case where the deed, will or other instrument effectively vests the title and control of such property in a trustee or grantee named in such instrument unless the trustee or grantee is incapable of taking or administering the trust, or refuses or fails to accept the trust, in which case the title and control thereof shall vest as provided in the preceding paragraph.

This Section does not validate any legacy which but for this enactment would have been invalid."

We do not find this provision to enhance Crown's position, nor does Crown explain how it does. The statute, in effect, provides that title to property given to a school district shall vest in the school board of the district, which shall hold, manage, improve, invest, or dispose of the property as best will promote the intention of the person giving the property. The statute has not been violated under the circumstances which have been described herein.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

NASH, P.J., and UNVERZAGT, J., concur.