HERBERT L. MAHRENHOLZ *et al.*, Plaintiffs-Appellants, v. COUNTY BOARD OF SCHOOL TRUSTEES OF LAWRENCE COUNTY *et al.*, Defendants-Appellees.

Fifth District   No. 5—87—0223

Opinion filed September 20, 1989.

261

Roscoe D. Cunningham, Ltd., of Lawrenceville, for appellants.

William Strange, State's Attorney, of Lawrenceville, for appellee County Board of School Trustees of Lawrence County.

John F. Borden, of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellee Board of Education, Community Unit School District #20.

JUSTICE RARICK delivered the opinion of the court:
This appeal arises from an action to quiet title to a 1½-acre tract of land located in Lawrence County, Illinois. Plaintiffs, Herbert and Betty Mahrenholz, filed their first complaint against defendants, County Board of School Trustees of Lawrence County and the Board of Education, Community Unit School District No. 20, in April of 1974. They since have been before us twice prior to this appeal. (See *Mahrenholz v. County Board of School Trustees* (1981), 93 Ill. App. 3d 366, 417 N.E.2d 138 (*Mahrenholz I*), and *Mahrenholz v. County Board of School Trustees* (1984), 125 Ill. App. 3d 619, 466 N.E.2d 322 (*Mahrenholz II*).) The controversy stems from the original conveyance of the land by W.E. and Jennie Hutton in 1941 to the Trustees of Schools of District Number One of the town of Allison (defendants' predecessor in interest) by warranty deed "to be used for school purpose only; otherwise to revert to Grantor." The school district subsequently built a school on the site, commonly known as Hutton School. The Huttons then conveyed the adjoining farmland and their reversionary interest in the school site to the Jacqmains, who in turn conveyed their interest to plaintiffs in 1959. The 1½-acre school site sits in the middle of plaintiffs' farmland.

In May of 1973, defendants discontinued holding regular classes at Hutton School. The building, from that time on, has been used to

warehouse and store miscellaneous school equipment and supplies, primarily unused desks. Plaintiffs filed suit in 1974 to quiet title to the school property in themselves on the basis of the interests acquired from the Jacqmains and from Harry E. Hutton, who was then believed to be the son and sole heir of W.E. and Jennie Hutton. (It was later determined Harry was in fact the stepson of Jennie Hutton, who survived her husband in joint tenancy.) The trial court dismissed plaintiffs' third amended complaint for failure to state a cause of action ruling that the 1941 warranty deed conveying the 1½-acre tract to defendants created a fee simple subject to a condition subsequent followed by the right of entry for condition broken rather than a determinable fee followed by a possibility of reverter. We ruled, however, in *Mahrenholz I* that the Huttons created a fee simple determinable followed by a possibility of reverter. While plaintiffs acquired no interest in the tract from the Jacqmains, we held they could have acquired an interest in the property from Harry Hutton (Harry's true status being unknown at this time). The litigation proceeded onward, resulting in a summary judgment for defendants on the basis the property was still being used for school purposes and had not reverted. We reversed this decision in *Mahrenholz II*, finding that there were genuine issues of fact as to whether the property actually was being used for a school purpose and whether plaintiffs were in possession of the premises. Twelve years after the first complaint was filed, the case finally came on for trial. After several days of testimony, a view of the property, and extensive briefing of the parties, the trial court ruled plaintiffs failed to prove that they were in possession of the premises and that the site was no longer being used for school purposes, resulting in the instant appeal. Both parties raise numerous points on appeal, but we believe the determinative issue is whether the property is being used for school purposes.

As we noted in *Mahrenholz II*, "school purpose" is indeed an ambiguous term, and in the context of a deed, undefined by case law. (125 Ill. App. 3d at 626-27, 466 N.E.2d at 327.) It does not, however, require the actual holding of classes. (125 Ill. App. 3d at 628, 466 N.E.2d at 328. See also *Wauconda Community Unit School District No. 118 v. La Salle National Bank* (1986), 143 Ill. App. 3d 52, 57-58, 492 N.E.2d 995, 999.) The question then becomes whether storage of school property constitutes a legitimate "school purpose." We believe that, in general, the answer is yes. School populations are not static. They change from year to year, and in some instances, from month to month. In order to accommodate such changes, storage facilities are necessary, not only to house surplus equipment and sup-

plies when attendance is low to meet the needs when attendance is higher but also to replace worn out and damaged items. Clearly, having such equipment and supplies on hand furthers the ultimate goal of educating students. This does not mean necessarily that all storage is for a school purpose. While defendants claim their storage falls within the ambit of "school purpose," plaintiffs contend defendants are using the building for nothing more than a "dumping ground," a refuge for obsolete materials, while allowing the building to deteriorate. If plaintiffs' claims were true, we would be compelled to agree defendants' use of the building would not constitute "school purpose." The evidence at trial, however, was lengthy and conflicting. Plaintiffs presented considerable evidence as to the deteriorating condition of the building and the lack of value and use of much of the items "stored" inside. But, defendants also presented evidence of having spent substantial amounts of money to maintain the structure, particularly the roof, along with several examples of recent usage of some of the equipment. For instance, defendants claim they have "cannibalized" certain stored equipment to repair "in use" items and plan to install a scoreboard formerly housed at Hutton in a nearby smaller gymnasium. We, sitting as a court of review, will not substitute our judgment for that of the trial court when faced with conflicts in the evidence and issues of the credibility of witnesses. (See, *e.g.*, *Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 333-34, 478 N.E.2d 860, 865.) This is particularly true in this instance when the trial judge, at plaintiffs' request, conducted a personal inspection and examination of the school and its contents. We agree with plaintiffs that defendants could have found more convenient storage facilities which were less expensive to maintain. It is not for us, however, to determine whether defendants' use of the premises is in the best economic interest of the district and its taxpayers. We simply cannot say that the trial court's determination that defendants' use of Hutton School in this instance constitutes a legitimate "school purpose" is against the manifest weight of the evidence. This being so, we must hold the property has not been abandoned for school purposes so as to invoke the reverter clause of the 1941 deed. (See *McCullough v. Swifton Consolidated School District* (1941), 202 Ark. 1074, 155 .S.W.2d 353; *Harris v. Consolidated School District No. 8C* (Mo. 1959), 328 S.W.2d 646 (*en banc*); *Ballantyne v. Nedrose Public School District No. 4* (N.D. 1970), 177 N.W.2d 551. Cf. *Withers v. Pulaski County Board of Education* (Ky. 1967), 415 S.W.2d 604; *Putney v. School District No. 4* (1934), 215 Wis. 539, 255 N.W. 76.) Because we are in agreement with the trial court's disposition of this issue which, in

turn, disposes of plaintiffs' claim, we need not address the other issues raised by the parties.

For the aforementioned reasons, we affirm the judgment of the circuit court of Lawrence County in favor of defendants.

Affirmed.

GOLDENHERSH and HOWERTON, JJ., concur.